IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 16-0005

_____

**FILED**

**April 20, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CITIZENS TELECOMMUNICATIONS COMPANY OF WEST VIRGINIA d/b/a
FRONTIER COMMUNICATIONS OF WEST VIRGINIA, FRONTIER WEST
VIRGINIA, INC.,
Defendant Below, Petitioner

v.

MICHAEL SHERIDAN, APRIL MORGAN, TRISHA COOKE, and RICHARD
BENNIS, individually, and on behalf of other similarly-situated individuals,
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of Lincoln County
The Honorable Jay M. Hoke, Judge
Civil Action No. 14-C-115

REVERSED AND REMANDED WITH INSTRUCTIONS

_____

Submitted: January 24, 2017
Filed: April 20, 2017

Thomas R. Goodwin, Esq.
J. David Fenwick, Esq.
Goodwin & Goodwin
Charleston, West Virginia

Archis A. Parasharami, Esq.
(admitted *pro hac vice*)
Mayer Brown LLP
Washington, DC

Benjamin Sheridan, Esq.
Mitchel Lee Klein, Esq.
Klein Sheridan & Glazer LC
Hurricane, West Virginia

Jonathan J. Marshall, Esq.
Bailey Glasser, LLP
Charleston, West Virginia

Counsel for the Respondents

Joseph J. Starsick, Jr., Esq.
Frontier Communications
Charleston, West Virginia

Counsel for the Petitioner


JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine."  Syllabus Point 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013).

2.      "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*."  Syllabus Point 1, *West Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, ___ W. Va. ___, 796 S.E.2d 574 (2017).

3.      "In the absence of a mutual agreement, based on a valid consideration, establishing modification of a written contract, there can be no subsequent modification of such a contract without consideration, and the mere promise of one of the parties to perform what he is already bound to do under the terms of the contract is not a sufficient consideration."  Syllabus Point 5, *Bischoff v. Francesa*, 133 W. Va. 474, 56 S.E.2d 865 (1949).

4.      "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them."  Syllabus Point 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962).

i

WALKER, Justice:

Citizens Telecommunications Company of West Virginia d/b/a Frontier Communications of West Virginia, Frontier West Virginia, Inc. ("Frontier") appeals the November 30, 2015 order of the Circuit Court of Lincoln County denying Frontier's motion to compel arbitration in a putative class action filed by Michael Sheridan, April Morgan, Trisha Cooke, and Richard Bennis on behalf of themselves and similarly-situated persons ("Respondents").

Frontier contends that the circuit court erred in refusing to enforce an arbitration provision in the parties' agreement. Upon consideration of the parties' briefs and arguments, the submitted record and pertinent authorities, we agree with Frontier, reverse the circuit court's order and remand with instructions to enter an order compelling arbitration on an individual basis.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Respondents are West Virginia residents who initially subscribed to Frontier's residential "high-speed Internet service" between August 2007 and June 2010. Respondents sued Frontier in October 2014 alleging that the service was much slower than advertised and that Frontier had intentionally reduced the speed at which Respondents could connect to the Internet.

As subscribers, Respondents' relationship with Frontier was governed by Frontier's Residential Internet Service Terms and Conditions ("Terms and Conditions"). The Terms and Conditions, available on Frontier's Internet website, provided that "**BY USING FRONTIER HIGH SPEED INTERNET SERVICES OR EQUIPMENT YOU ARE AGREEING TO THESE TERMS AND CONDITIONS**." (Emphasis in original). At the time Respondents subscribed to the service, the Terms and Conditions did not contain a dispute resolution provision. However, the Terms and Conditions contained a provision that permitted Frontier to propose changes to the terms, upon notice to customers. Continued use of the service by a customer after any change was considered to be the customer's acceptance of the new term. For example, the Terms and Conditions in effect from July 2011 until March 2013 provided:

**OUR RIGHT TO MAKE CHANGES**

> **UNLESS OTHERWISE PROHIBITED BY LAW, FRONTIER MAY CHANGE PRICES, TERMS AND CONDITIONS AT ANY TIME BY GIVING YOU 30 DAYS NOTICE BY BILL MESSAGE, E-MAIL, OR OTHER NOTICE, INCLUDING POSTING NOTICE OF SUCH CHANGES ON THIS WEBSITE, UNLESS THE PRICES, TERMS AND CONDITIONS ARE GUARANTEED BY CONTRACT. YOU ACCEPT THE CHANGES IF YOU USE THE SERVICE AFTER NOTICE IS PROVIDED.**

(Emphasis in original). [1]

---

[1] Frontier states that this was the version in effect from July 21, 2011 until March 7, 2013, which encompasses the relevant time frame for the contract modifications at issue in this case. Frontier further contends that the current version of this "right to make changes" clause, which has been in effect since March 2013, is materially similar.

In September 2011, Frontier altered the Terms and Conditions and added an arbitration provision requiring any dispute between a customer and Frontier to be resolved by binding arbitration on an individual basis. More specifically, the arbitration provision included waivers of the right to a trial by jury and the right to participate in a class action, a representative proceeding or a private attorney general action. Frontier included a notice of this change in the September 2011 billing statement, which provided as follows:

> As part of our Terms and Conditions of service, Frontier has recently instituted a binding arbitration provision to resolve customer disputes. This provision will become effective 45 days from the date of this bill. Please refer to www.frontier.com or call Frontier 1-800-426-7320, option 3 for more information.

Respondents assert that they never read this portion of the billing statement because Frontier placed it toward the end of a multipage billing statement after many other notices. Respondents further contend the terms of the arbitration provision were not contained in the billing statement.

In January 2012, Frontier revised the arbitration provision to include terms that Frontier describes as more "consumer friendly."[2] Frontier sent a notice of these revisions to Respondents in their January 2012 billing statement.

_____

[2] Frontier's revised arbitration provision provides that (1) arbitration is cost-free to the customer; (2) Frontier will pay a double recovery up to $5,000 if a customer's arbitration award exceeds Frontier's settlement offer; (3) Frontier disclaims any right to seek attorneys' fees; (4) either party may bring a claim in small claims court; (5) there is

In November 2012, Frontier placed a folded, paper copy of the Terms and Conditions, including the arbitration provision, in each customer's billing statement and included the following notice:

> Frontier has made revisions to the Terms and Conditions that apply to your Residential Frontier Internet service. The revised Terms and Conditions are posted at www.frontier.com/terms/ and are included as a special insert in this bill. By using and paying for Frontier Internet services, you are agreeing to these revised Terms and Conditions and the requirement that disputes be resolved by individual arbitration instead of class actions and/or jury trials. You may opt out of the revised Terms and Conditions and instead remain subject to your previously applicable terms by calling 1-866-606-2849 . . . within 30 days from the date of this bill.

On October 14, 2014, Respondents filed a putative class action complaint alleging that Frontier never provided Internet service at advertised speeds and purposefully "throttled" the speed of its customers' Internet service. In the complaint, Respondents sought declaratory relief that they had not agreed to arbitrate any claims arising from Frontier's service and that their putative class action was not subject to

---

no confidentiality requirement; (6) the arbitrator may award the customer any form of individual relief that a court could including punitive damages, statutory damages, attorney's fees, and individualized injunctions; (7) arbitration will be conducted under the rules of the American Arbitration Association ("AAA"); (8) arbitration will occur in the customer's state unless the parties agree otherwise; (9) for claims of $10,000 or less, customers have the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a hearing by telephone, or a desk arbitration in which the arbitration will be conducted solely on the basis of documents submitted to the arbitrator; and (10) the arbitrator must issue a written decision.

arbitration. Respondents also sought monetary damages, attorneys' fees and an injunction.

On January 30, 2015, Frontier filed a motion to compel arbitration and to dismiss the action, or, in the alternative, to stay the action. In an order dated November 30, 2015, the circuit court denied the motion to compel arbitration and to dismiss and found that: (1) an agreement to arbitrate was never formed because Respondents never assented to the arbitration provision; (2) the arbitration provision was illusory and lacked consideration; (3) the arbitration provision did not cover claims that pre-dated adoption of the provision; and (4) the arbitration provision was unenforceable due to its prohibition of class-wide injunctive relief. It is from this order and these particular findings that Frontier appeals.

## II. STANDARD OF REVIEW

Frontier appeals the circuit court's denial of its motion to compel arbitration and to dismiss. This Court has held previously that "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013). We recently held that "[w]hen an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 1, *West Virginia CVS Pharmacy, LLC v.*

5

*McDowell Pharmacy, Inc.*, ___ W. Va. ___, 796 S.E.2d 574 (2017).  Similarly, we "we apply a *de novo* standard of review to [a] circuit court's interpretation of [a] contract." *Zimmerer v. Romano*, 223 W.Va. 769, 777, 679 S.E.2d 601, 609 (2009).  Accordingly, we apply a *de novo* standard of review to the issues presented in this appeal, which is properly before this Court.

## III.  DISCUSSION

In support of its challenge to the circuit court's order, Frontier argues that an agreement to arbitrate was properly formed with Respondents in a unilateral contract. First, Frontier asserts that the parties mutually assented to the arbitration provision. Second, Frontier contends that there was consideration for the parties' overall agreement and that the arbitration provision is not illusory in that it binds both parties.  Next, it argues that an arbitration provision may apply to disputes that arose prior to the formation of the agreement to arbitrate.  Finally, Frontier asserts that an arbitration agreement may prohibit class-wide injunctive relief.  We address each of these four issues, in turn, below.

### A.  *Mutual Assent*

Frontier first asserts that the circuit court erred in finding that the agreement lacked mutual assent and thereby erred in concluding that no agreement to arbitrate was ever formed.  The circuit court based its finding, in part, on its characterization of the

Terms and Conditions and the arbitration provision contained therein as an online browsewrap agreement. Frontier disagrees with this characterization, arguing that it is an enforceable unilateral contract that Respondents received in a printed, physical form in November 2012. Finally, Frontier argues that the circuit court erred in its conclusion that the agreement lacked mutual assent because it found the obscured placement of the notice of Terms and Conditions in the billing statements and the one-time inclusion of a paper copy of the Terms and Conditions insufficient to show that the Respondents had agreed to such terms.

Respondents agree with the circuit court's characterization of the Terms and Conditions as a browsewrap agreement and also assert that Frontier cannot prove that any of the Respondents actually visited Frontier's website or read the Terms and Conditions. Respondents further assert that they did not assent to the addition of the arbitration provision to the Terms and Conditions because they were not given adequate notice by the billing statements or by the one-time inclusion of the paper copy of the written terms.

A browsewrap agreement is a contract arising in the context of Internet commerce that is formed when one accepts it merely by browsing a website. *State ex rel. U-Haul Co. of W. Va. v. Zakaib*, 232 W. Va. 432, 440 n.7, 752 S.E.2d 586, 594 n.7 (2013). To be bound by the website's terms and conditions requires no other affirmative

7

act by the user. *Id.* As noted by the circuit court in the case before us, courts have been wary to enforce browsewrap agreements where the terms and conditions are heavily obscured, often only briefly referenced at the bottom of a page buried deep within a website. Because visitors to the website are often completely unaware that they are bound by the website's terms simply by being on the website, much less aware of the substance of those terms, browsewrap agreements in which terms and conditions are heavily obscured have been viewed with suspicion. *See, e.g.*, *Berkson v. Gogo, LLC*, 97 F. Supp.3d 359, 395 (E.D.N.Y. 2015) ("Because of the passive nature of acceptance in browsewrap agreements, courts closely examine the factual circumstances surrounding a consumer's use."); *Specht v. Netscape Comm. Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (declining to enforce arbitration clause in terms and conditions of website where there was no notice of existence of contract terms and terms and conditions themselves were hidden).

Although Frontier made the Terms and Conditions accessible online, they also indisputably were distributed to Respondents in the November 2012 paper billing statement. The contract between Frontier and its customers was not executed over the Internet or any other electronic platform; the Terms and Conditions merely were made available in more than one medium. Likewise, acceptance of Frontier's Terms and Conditions was not manifested through use of its website alone, which is the hallmark of a browsewrap agreement. In fact, Frontier admits it was not necessary for customers to

8

ever visit the website in order to continue service. Rather, acceptance of the Terms and Conditions occurred through continued use of Frontier's Internet service. Accordingly, we find that the circuit court erroneously mischaracterized the Terms and Conditions as a browsewrap agreement.

Traditional contract law rather than a novel analysis of Internet contracts governs whether mutual assent occurred under the facts of this case. While Frontier argues correctly that arbitration provisions may not be subject to heightened scrutiny or notice requirements, we also note that arbitration provisions are not entitled to standards more lax than any other contract provision. Syl. Pt. 7, in part, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012) ("*Brown I*") ("The [Federal Arbitration] Act does not favor or elevate arbitration agreements to a level of importance above all other contracts; it simply ensures that private agreements to arbitrate are enforced according to their terms."). Notice requirements and mutual assent to modification are contract principles that apply irrespective of the subject matter of the term or terms being modified. Thus, the arbitration provision added to Frontier's Terms and Conditions is subject to the same scrutiny and notice requirements as any other modification of a contract. *Schumacher Homes of Circleville, Inc. v. Spencer*, 237 W. Va. 379, 391-92, 787 S.E.2d 650, 662-63 (2016) ("The general tools for examining contracts are familiar to any first-year law student: ambiguity, coercion, duress, estoppel,

9

fraud, impracticality, laches, lack of capacity, misrepresentation, mistake, mutuality of assent, unconscionability, undue influence, waiver, or even lack of offer, acceptance or consideration. If the contract defense exists under general state contract law principles, then it may be asserted to counter the claim that an arbitration agreement or a provision therein binds the parties."); Syl. Pt. 9, *Brown I,* 228 W.Va. 646, 724 S.E.2d 250 ("Nothing in the Federal Arbitration Act . . . overrides normal rules of contract interpretation. Generally applicable contract defenses—such as laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to invalidate an arbitration agreement.").

The Terms and Conditions at issue here are the prototypical unilateral contract. A unilateral contract is established "where one party makes a promissory offer and the other accepts by performing an act rather than by making a return promise." *Cook v. Heck's Inc.*, 176 W. Va. 368, 373, 342 S.E.2d 453, 458 (1986). We have recognized "[t]hat an acceptance may be effected by silence accompanied by an act of the offeree which constitutes a performance of that requested by the offeror." *First Nat'l Bank v. Marietta Mfg. Co.,* 151 W.Va. 636, 641-42, 153 S.E.2d 172, 176 (1967). Frontier presented its Terms and Conditions as a condition of providing Internet service to customers, and Frontier's customers accepted those Terms and Conditions by using and paying for that Internet service, forming a unilateral contract.

10

Frontier's advertisement that its Internet service requires "No Contract" does not dissuade us from concluding there existed a unilateral contract between the parties. Such advertisements clearly aim to entice customers to sign up for Internet service with the option to cancel the service at any time without penalty; they do not imply that the service is governed by no terms whatsoever. In any case, Frontier did not begin advertising "No Contract" until several years after Respondents subscribed to Frontier's residential Internet service. Moreover, aside from alluding to the advertisements, Respondents do not argue that the underlying Terms and Conditions are unenforceable as a unilateral contract. Rather, Respondents assert that the *modifications* to the Terms and Conditions to include the arbitration provision did not form an agreement to arbitrate because the modifications lacked mutual assent.

Most commonly, this Court has examined the interpretation and modification of unilateral contracts in the context of employee handbooks or manuals. We have held:

> A promise of job security contained in an employee handbook distributed by an employer to its employees constitutes an offer for a unilateral contract; and an employee's continuing to work, while under no obligation to do so, constitutes acceptance and sufficient consideration to make the employer's promise binding and enforceable.

Syl. Pt. 5, *Cook,* 176 W. Va. 368, 342 S.E.2d 453. We find the contract and modification at issue in the present case analogous to an employee handbook in that Frontier agreed to provide Internet service pursuant to its Terms and Conditions, which would be accepted

11

by Respondents by continuing to subscribe to the service while under no obligation to do so. Additionally, Frontier, like many employers, reserved the right to make unilateral modifications to the Terms and Conditions upon notice of the changes.

Concerning mutual assent to contract, we have held:

It is elementary that mutuality of assent is an essential element of all contracts. *Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc.*, 158 W. Va. 935, 216 S.E.2d 234 (1975). In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied. *See Lacy v. Cardwell*, 216 Va. 212, 217 S.E.2d 835 (1975); *Charbonnages de France v. Smith*, 597 F.2d 406, 415-416 (4th Cir. 1979).

*Bailey v. Sewell Coal Co.*, 190 W. Va. 138, 140-41, 437 S.E.2d 448, 450-51 (1993). This Court analyzed mutual assent in the context of an employer's modifications to its unilateral contract with employees in *Hogue v. Cecil I. Walker Machinery Company*, 189 W. Va. 348, 431 S.E.2d 687 (1993). In *Hogue*, we held that "a subsequent modification may be made unilaterally by the employer, but to make the modification effective the employer is required to give the employees reasonable notice of the changes." *Id.* at 352, 431 S.E.2d at 691.

Based upon this precedent, the issue is whether Frontier gave Respondents reasonable notice that a modification was being made to the Terms and Conditions. Frontier argues that its billing statement (1) specifically gave notice that a modification to the Terms and Conditions was being made relating to the arbitration provision, which was to become effective in forty-five days; (2) referred customers to its website, where the Terms and Conditions could be accessed online; and (3) advised that customers could also call Frontier at a particular extension for information concerning the modification. Respondents counter that (1) the notice of the changes was obscured because it appeared on page four of the bill after many other notices, whereas customers need only look at the first page to make the payment; (2) the Terms and Conditions are difficult to find on Frontier's website; and (3) Respondents never actually read the arbitration provision because it was not printed separately and directly on the bill but rather the entirety of the Terms and Conditions was included in the November 2012 bill.

In *Collins v. City of Bridgeport*, 206 W.Va. 467, 525 S.E.2d 658 (1999), we discussed the reasonable notice requirement set forth in *Hogue*. Although "reasonable notice" was not defined, this Court found that reasonable notice was met by printing a new policy in a personnel policy manual. *Id.* at 476, 525 S.E.2d at 667. In adopting the rule on reasonable notice, however, this Court in *Hogue* discussed a Washington Supreme Court case, *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wash.2d 426, 815 P.2d 1362 (1991), which recognized the same right to reasonable notice. In *Gaglidari*, the

13

employer argued that copies of the changed policy manual were often left in the employees' lounge, seemingly by new employees who were disposing of them. *Id.* at 435, 815 P.2d at 1367. The *Gaglidari* court found that it would be "wholly fortuitous" that current employees might actually read any copies of the policies left in the employees' lounge by the new employees, and found this was insufficient to provide reasonable notice to the employees of the changes. *Id.*

In the present case, the facts differ drastically from those in *Gaglidari* because it is not "wholly fortuitous" that Frontier customers would read their bills in their entirety. Likewise, it would not be wholly fortuitous that based on the notice enclosed in the bill, Respondents would read the provision online, read the enclosed Terms and Conditions included in the November 2012 bill, or call to inquire about the amended provision if they took issue with the provision or wanted more information. Frontier would be required to fit all information it wanted its customers to know onto the first page of a bill or somehow ensure that all of its customers read their bills in their entirety in order to conform to the reasoning upon which Respondents rely.

There is clear evidence that Frontier provided written notice of the change to the Terms and Conditions to its customers, which is consistent with the reasonable notice found in *Collins*. The fact that Respondents neither availed themselves of any paper or electronic source of information on the change nor called the number provided

14

for additional information does not detract from the reasonableness of the notice. Frontier was entitled to rely on its customers to read information circulated to them, particularly when a paper copy of the Terms and Conditions was included in the November 2012 billing statement. There is no dispute that these Respondents received their September 2011, January 2012 and most importantly, November 2012 bills, and Respondents do not allege that Frontier otherwise failed to provide access to the Terms and Conditions to its customers.

Accordingly, we conclude that Frontier provided reasonable notice to its customers of its changes to the unilateral contract, and Respondents assented to the changes by virtue of continuing to subscribe to Frontier's Internet service after the reasonable notice was provided.

### B.    *Consideration and Illusoriness*

We next address the circuit court's finding that the arbitration provision lacked consideration and is illusory. "Consideration is . . . an essential element of a contract." *Cook*, 176 W. Va. at 458, 342 S.E.2d at 373 (citations omitted). We have described sufficient consideration as follows:

> Consideration has been defined as "some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another." 17 Am.Jur.2d, Contracts, Section 85. A benefit to the promisor or a detriment to the promisee is

> sufficient consideration for a contract. 17 Am.Jur.2d,
> Contracts, Section 96.

*First Nat'l Bank,* 151 W.Va. at 642, 153 S.E.2d at 177. Frontier argues at length that additional consideration may not be required of an arbitration provision and that consideration for the whole is sufficient for an individual provision. *See* Syl. Pt. 6, *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550 (2012) ("The formation of a contract with multiple clauses only requires consideration for the entire contract, and not for each individual clause. So long as the overall contract is supported by sufficient consideration, there is not requirement of consideration for each promise within the contract, or of 'mutuality of obligation,' in order for a contract to be formed."). However, we also have held that "not only must such modification or alterations be by mutual agreement but must be based upon a valid consideration, and the original consideration . . . cannot be used as consideration for any agreement of modification or alteration in connection therewith." *Steinbrecher v. Jones*, 151 W. Va. 462, 470, 153 S.E.2d 295, 301 (1967). Likewise, "[i]n the absence of a mutual agreement, based on a valid consideration, establishing modification of a written contract, there can be no subsequent modification of such a contract without consideration, and the mere promise of one of the parties to perform what he is already bound to do under the terms of the contract is not a sufficient consideration." Syl. Pt. 5, *Bischoff v. Francesa*, 133 W. Va. 474, 56 S.E.2d 865 (1949). Thus, because the original Terms and Conditions lacked an agreement to arbitrate, the modification of the Terms and Conditions to include such a provision required new consideration.

16

Frontier argues that the mutual agreement of the parties to arbitrate is sufficient consideration to support the modification. Respondents counter that the commitment to arbitrate cannot be adequate consideration as it is an illusory promise because Frontier retains the ability to change the Terms and Conditions at its discretion. We find that the mutual commitment to arbitrate is sufficient consideration for the modification. As we explained in *Toney v. EQT Corp.*, No. 13-1011, 2014 WL 2681091 at \*3 (June 13, 2014) (memorandum decision), "the mutual commitments to arbitrate alone constitute sufficient consideration to support the contract." As to the subsequent modification altering the terms of arbitration in January 2012, Frontier undertook additional burdens while providing its customers with additional benefits.[3] In accordance with our holding in *First Nat'l Bank,* 151 W.Va. at 642, 153 S.E.2d at 177, these additional burdens and benefits are the hallmark of consideration. Thus, we find that both the September 2011 and January 2012 modifications were supported by adequate consideration.

Finally, we reject Respondents' argument that the promise to arbitrate was illusory by virtue of Frontier's right to make changes. In *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995), we discussed a "change in terms" reservation, finding that "[r]etaining the right to make changes . . . does not necessarily mean

---

[3] *See supra* note 2.

17

promises explicitly or implicitly made . . . are not enforceable, at least until such time as they are in fact changed." *Id*. at 65, 459 S.E.2d at 342. Here, the arbitration provision itself explicitly provides that if Frontier makes any changes to the arbitration provision, the customer has the ability to reject the change and instead remain subject to the previous terms relating to dispute resolution. Thus, the agreement to arbitrate is not an illusory promise because both parties are bound to arbitrate and unilateral changes to the agreement to arbitrate may not be implemented without consent from Frontier customers. Accordingly, we find that the agreement to arbitrate did not lack consideration and was not illusory.

### C.    *Applicability to Pre-existing Claims*

Frontier also asserts that the circuit court erred in finding that the arbitration provision did not apply to pre-existing claims because it relied on a mistaken reading of *New v. GameStop, Inc.*, 232 W. Va. 564, 753 S.E.2d 62 (2013), as holding that arbitration agreements could not be enforced retroactively. In *GameStop*, we held that an arbitration provision in an employee handbook was enforceable, but that it could not apply retroactively pursuant to the text of the arbitration agreement itself, which provided that the arbitration provision could only be applied prospectively. *Id.* at 68, 753 S.E.2d at 570. Therefore, the holding was a simple matter of enforcing the parties' agreement pursuant to the terms outlined, not a general prohibition on retroactive enforcement of all agreements to arbitrate.

18

Frontier asserts that this Court has applied arbitration agreements retroactively by applying a 2005 version of an arbitration provision to a dispute arising in 2003. *See Shorts* v. *AT&T Mobility,* No. 11-1649, 2013 WL 2995944, at *4 (W. Va. 2013) (memorandum decision); *State ex rel. AT&T Mobility, LLC* v. *Wilson,* 226 W. Va. 572, 576 n.9, 703 S.E.2d 543, 547 n.9 (2010). However, Frontier's reading of these cases is also flawed. In those cases, the parties had already conceded which version of the arbitration provision was applicable; this Court made no finding or holding in *Shorts* or *Wilson* regarding which version was applicable. In those cases, we merely observed that the concession had been made and was not at issue in the appeal. *Id.* In light of the lack of binding precedent specific to arbitration provisions, we return to traditional contract principles.

Although Respondents argue that subjecting Frontier customers to arbitrate disputes arising before institution of the arbitration clause would produce an unfair result, we have previously held:

> [i]n the absence of ambiguity we cannot be swayed by a persuasive argument that the intent expressed by such language may produce a harsh result. So long as an otherwise valid contract does not contravene some principle of law or public policy, it must stand and become operative as the deliberate act of the parties.

*Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 492-93, 128 S.E.2d 626, 633 (1962). Indeed, as we cautioned in *Cotiga*, "[i]t is not the right or province of a court to

19

alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." *Id.* at Syl. Pt. 3. Moreover, the subject arbitration provision is valid, enforceable, and devoid of ambiguity. Thus, it is not the province of this court to alter the terms of that contract to exclude pre-existing disputes where there is no contravening principle of law or public policy. Indeed, the Federal Arbitration Act ("FAA") specifically provides that parties may agree to arbitrate "an existing controversy." 9 U.S.C. § 2.

> The arbitration provision at issue provides in relevant part:
>
> You and Frontier agree to arbitrate all disputes and claims between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to, all claims arising out of or relating to any aspect of our relationship, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory that arose either before or during this or any prior Agreement, or that may arise after termination of this agreement.

This arbitration provision clearly and explicitly provides that it applies to pre-existing disputes. Because there is no contravening authority that would preclude enforcement of the provision as written, we conclude that the agreement to arbitrate may be applied to pre-existing claims.

### D.    *Prohibition on Class-wide Injunctive Relief*

Finally, Frontier argues that the circuit court erred in finding the arbitration provision unenforceable due to its prohibition on class-wide injunctive relief. Frontier

20

contends that *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) precludes such a finding under the FAA. In response, Respondents argue that the circuit court, having already rendered the arbitration provision unenforceable on other grounds, never actually made that finding. According to Respondents, the circuit court simply was commenting that the limitation on class-wide injunctive relief is "significant and troubling." However, Respondents also assert that the circuit court did not err in rendering the arbitration provision unenforceable due to its prohibition on class-wide injunctive relief because such a finding did not run afoul of *Concepcion*. We disagree.

In *Concepcion*, the United States Supreme Court explained that "[r]equiring the availability of class-wide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA" and concluded that "[s]tates cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 344, 351. Subsequently, in *American Express Co. v. Italian Colors Restaurant*, ___ U.S. ___, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013), the Court upheld a class action waiver in an arbitration agreement, noting that neither any contrary congressional command nor any judge-made exception to the FAA requires rejection of a class-arbitration waiver. *Id.* at ___, 133 S.Ct. at 2309-12, 186 L.Ed.2d at 424-27.

Similarly, in considering arbitration agreements that contain class action waivers, we consistently have recognized that inclusion of such a waiver does not automatically render the arbitration agreement unconscionable or unenforceable. *State ex rel. Ocwen Loan Serv. v. Webster*, 232 W.Va. 341, 359, 752 S.E.2d 372, 390 (2013); *State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 228 W.Va. 125, 140, 717 S.E.2d 909, 924 (2011); *State ex rel. AT & T Mobility, LLC v. Wilson*, 226 W.Va. 572, 579, 703 S.E.2d 543, 550 (2010). Assuming that the circuit court found the arbitration provision unenforceable due to its prohibition of class-wide injunctive relief, such ruling is prohibited by our precedent and by the FAA under *Concepcion*. It is permissible for parties to an arbitration provision to agree to waive class-wide injunctive relief. The circuit court erred in holding otherwise.

## IV. CONCLUSION

For the foregoing reasons, we reverse the November 30, 2015 order of the Circuit Court of Lincoln County and remand with instructions to enter an order compelling arbitration on an individual basis.

Reversed and remanded with instructions.

22