IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0487

_____

FILED
**June 2, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA DEPARTMENT OF
HEALTH AND HUMAN RESOURCES,
Defendant Below, Petitioner

v.

RENE G. DENISE,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Tera L. Salango, Judge
Civil Action No. 19-C-1045

AFFIRMED

_____

Submitted: April 21, 2021
Filed: June 2, 2021

Jan L. Fox, Esq.
Mark C. Dean, Esq.
Michelle E. Gaston, Esq.
Steptoe & Johnson PLLC
Charleston, West Virginia
Counsel for Petitioner

Todd S. Bailess, Esq.
Rodney A. Smith, Esq.
Bailess Smith PLLC
Charleston, West Virginia

Michael P. Addair, Esq.
Addair Law Office PLLC
Hurricane, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.	"An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine."  Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013).

2.	"When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*."  Syl. Pt. 2, in part, *Citizens Telecomms. Co. of W. Va. v. Sheridan*, 239 W. Va. 67, 799 S.E.2d 144 (2017).

3.	"A non-signatory to a written agreement requiring arbitration may utilize the estoppel theory to compel arbitration against an unwilling signatory when the signatory's claims make reference to, presume the existence of, or otherwise rely on the written agreement.  Such claims sufficiently arise out of and relate to the written agreement as to require arbitration."  Syl. Pt. 4, *Bluestem Brands, Inc. v. Shade*, 239 W. Va. 694, 805 S.E.2d 805 (2017).

4.	"The doctrine of estoppel should be applied cautiously and only when equity clearly requires it to be done."  Syl. Pt. 3, *Humble Oil & Ref. Co. v. Lane*, 152 W. Va. 578, 165 S.E.2d 379 (1969).

i

**Armstead, Justice:**

Respondent, Rene G. Denise, has sued Petitioner, West Virginia Department of Health and Human Resources ("DHHR"), in the Circuit Court of Kanawha County for alleged violations of the West Virginia Human Rights Act ("Human Rights Act").[1] DHHR seeks to compel Ms. Denise to submit her statutory discrimination claims to binding arbitration, but DHHR is not a party to the arbitration agreement that it seeks to enforce. When DHHR moved to compel arbitration, the circuit court refused to do so, concluding that DHHR could not compel arbitration, that the arbitration agreement does not apply to the parties' dispute, and that the arbitration agreement is unconscionable. On appeal, DHHR asks this Court to reject these conclusions and compel Ms. Denise to submit to binding arbitration.

Based on the record before us, the arguments of the parties, and the applicable law, we agree that DHHR cannot enforce the arbitration agreement; therefore, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Denise is a nurse who formerly worked for Sunbelt Staffing, LLC ("Sunbelt"). In August 2017, Ms. Denise signed a Consultant Employment Agreement ("CEA") containing the following terms:

---

[1] The Human Rights Act is codified in chapter 5, article 11 of the West Virginia Code. *See* W. Va. Code §§ 5-11-1 to -20 (2016).

**Arbitration**

15.     Any dispute or difference between Sunbelt and Consultant arising out of or relating to this Agreement shall be finally settled by arbitration in accordance with the rules of the American Arbitration Association by a single arbitrator. The [sic] Sunbelt and Consultant shall agree on an arbitrator. If Sunbelt and the Consultant fail to agree on an arbitrator within thirty (30) days after notice of commencement of arbitration, the American Arbitration Association shall, upon the request of either party, appoint the arbitrator to constitute the panel. Arbitration proceedings hereunder may be initiated by either Sunbelt or Consultant by making a written request to the American Arbitration Association, together with any appropriate filing fee, at the office of the American Arbitration Association in Jacksonville, Florida. All arbitration proceedings shall be held in Jacksonville, Florida. Any order or determination of the arbitral tribunal shall be final and binding upon the parties to the arbitration and may be entered in any court having jurisdiction.

Ms. Denise was assigned to work at William R. Sharpe, Jr. Hospital under DHHR's direction and began work in or about September 2017. She claims that she was "jointly employed" by Sunbelt and DHHR and that DHHR exercised control over her with authority that included termination and hiring decisions. She also claims that a co-worker, Scott Starcher, sexually harassed her and that neither the human resources person, "Melanie,"[2] nor the supervisor, Francis Stump, took appropriate steps to protect her from such harassment. On the contrary, Ms. Denise claims that she was moved to an undesirable shift and that, in November 2017, she "discovered that her contract had been cancelled and

---

[2] The amended complaint indicates that Ms. Denise does not know this person's last name.

2

she was no longer employed by Defendants." Sunbelt later informed her that she was "not eligible" to return to work for DHHR.

Ms. Denise sued Sunbelt, Mr. Starcher, Ms. Stump, and "Melanie" (as "Jane Doe") in October 2019. In November 2019, she filed an Amended Complaint naming DHHR as an additional defendant. The Amended Complaint accuses the defendants of subjecting Ms. Denise to sexual harassment and a hostile work environment and of retaliating against her when she complained—all in violation of the Human Rights Act. Ms. Denise subsequently dismissed Sunbelt and Mr. Starcher from the case, leaving DHHR, Ms. Stump, and "Melanie" as the only remaining defendants.

In March 2020, DHHR moved to dismiss the amended complaint and compel arbitration under the CEA. The circuit court denied the motion in a June 8, 2020 order, and DHHR filed this appeal.

## II. STANDARD OF REVIEW

In this appeal, DHHR challenges the circuit court's refusal to dismiss Ms. Denise's case and force her to arbitrate her claims. We have held that "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013). "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 2, in part, *Citizens Telecomms. Co. of W. Va. v. Sheridan*, 239 W. Va. 67, 799 S.E.2d 144 (2017). "Our review is also plenary to the extent our analysis requires us to

examine the circuit court's interpretation of the parties' Agreement." *Hampden Coal, LLC v. Varney*, 240 W. Va. 284, 290, 810 S.E.2d 286, 292 (2018).

## III.  ANALYSIS

In this appeal, DHHR raises four assignments of error.  According to DHHR, the circuit court erred by concluding (a) that Ms. Denise was only obliged to arbitrate disputes with Sunbelt, (b) that DHHR cannot invoke equitable estoppel to compel Ms. Denise to arbitrate her claims against DHHR, (c) that Ms. Denise's Human Rights Act claims fall outside the scope of the arbitration agreement, and (d) that the arbitration agreement is procedurally and substantively unconscionable.  We will confine our analysis to the first two assignments of error because they are dispositive.

### A.  Whether the CEA Requires Arbitration

DHHR boldly contends that "it is *without question* that DHHR can enforce [Ms.] Denise's employment agreement and compel arbitration of this employment suit."[3] (Emphasis added).  DHHR's confidence is unfounded.  It is true, as DHHR observes, that "the Federal Arbitration Act . . . , 9 U.S.C. § 1 *et seq*. (2000 ed. and Supp. V), establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).  We also agree "that, as a matter

---

[3] We assume, without deciding, that the CEA at issue herein is a "contract evidencing a transaction involving commerce[.]" 9 U.S.C. § 2 (1947) ("A written provision in any maritime transaction *or a contract evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (emphasis added)).

4

of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

However, these observations put the cart before the horse. "[T]he [Federal Arbitration Act]'s proarbitration policy does not operate without regard to the wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). There is no "policy favoring arbitration" unless "the parties *contract for* that mode of dispute resolution." *Preston*, 552 U.S. at 349 (emphasis added). Because "[a]rbitration is a matter of contract, . . . a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *State ex rel. U-Haul Co. of W. Va. v. Zakaib*, 232 W. Va. 432, 439, 752 S.E.2d 586, 593 (2013); *accord Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W. Va. 421, 439, 781 S.E.2d 198, 216 (2015) ("A party generally cannot be forced to participate in an arbitration proceeding unless the party has, in some way, agreed to participate."). This principle extends to the agreed-upon parties who may enforce the arbitration agreement. "[N]othing in the [Federal Arbitration Act] authorizes a court to compel arbitration of any issues, *or by any parties*, that are not already covered in the agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (emphasis added); *accord Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) ("[I]t is . . . clear from our precedents and the contractual nature of arbitration that parties may specify *with whom* they choose to arbitrate their disputes."). Thus, when parties stipulate *whose* claims will be subject to arbitration, we are obliged to respect their decision. As the

5

United States Supreme Court has admonished, "courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Stolt-Nielsen*, 559 U.S. at 684.

This poses a problem for DHHR, because DHHR is neither a party to the CEA[4] nor a party with whom Ms. Denise, pursuant to the CEA, has agreed to arbitrate disputes. The CEA identifies Ms. Denise as "Consultant." The CEA specifies that "[a]ny dispute or difference *between Sunbelt and Consultant*" is subject to arbitration. (Emphasis added). It declares that "*Sunbelt and Consultant* shall agree on an arbitrator" and that if "*Sunbelt and the Consultant* fail to agree on an arbitrator . . . ," one will be appointed for them. (Emphasis added). It further provides that "[a]rbitration proceedings hereunder may be initiated by *either Sunbelt or Consultant*[.]" (Emphasis added). As DHHR points out, the CEA contemplates that Ms. Denise would "provide services under the direction and supervision of Client [in this case, DHHR,]" yet neither "Client" nor DHHR is mentioned once in the CEA's arbitration provisions. Accordingly, we find that the CEA is an agreement between Ms. Denise and Sunbelt and that nothing in the agreement suggests that those parties intended to allow DHHR to invoke any right to arbitration contained in their agreement.

---

[4] The CEA provides that it is "between Sunbelt Staffing, LLC and its successors and assigns (hereinafter collectively referred to as 'Sunbelt'), and its employee, Rene Denise, RN (hereinafter 'Consultant')." (Bold removed). There is no indication that DHHR is a successor to or assignee of Sunbelt's rights under the CEA, despite DHHR's attempt to conflate Ms. Denise's "assignment" to work for DHHR, pursuant to the CEA, with the "assignment" of Sunbelt's rights under the CEA.

## B. Whether the Theory of Estoppel Requires Arbitration

Faced with these realities, DHHR argues that "estoppel allows a non-signatory to enforce a contract's arbitration agreement" and that Ms. Denise's "employment-related claims" provide a sufficient predicate for DHHR to compel arbitration. We agree that, in appropriate circumstances, equity may require a party to submit to arbitration when that party has not bound itself to do so. Under the Federal Arbitration Act, the enforceability of arbitration agreements remains a matter of state contract law, and "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,' 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)[.]" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *accord Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000) ("Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties."). Thus, and as a matter of state common law, we have held that

> [a] non-signatory to a written agreement requiring arbitration may utilize the estoppel theory to compel arbitration against an unwilling signatory when the signatory's claims make reference to, presume the existence of, or otherwise rely on the written agreement. Such claims sufficiently arise out of and relate to the written agreement as to require arbitration.

Syl. Pt. 4, *Bluestem Brands, Inc. v. Shade*, 239 W. Va. 694, 805 S.E.2d 805 (2017).

7

DHHR contends that "[i]t is inconceivable to think that the employment-related suit brought by [Ms.] Denise . . . does not 'arise out of and relate to' her employment agreement" and accuses Ms. Denise of attempting to claim the benefits of the CEA even as she rejects its arbitration provisions. As support for these claims, DHHR contends that Ms. Denise "knew from the date of her employment with Sunbelt" that she would be working under DHHR's "direction and supervision[.]"[5] DHHR further observes that Ms. Denise was placed with DHHR "by virtue of [her] contractual relationship" with Sunbelt and that Ms. Denise claims both Sunbelt and DHHR as her employers.

We are not convinced. The fact that, *in appropriate circumstances*, courts may apply estoppel to compel arbitration at the behest of a non-signatory does not mean that we will rush to do so. Estoppel must not be applied without "tak[ing] into consideration the relationships of persons, wrongs and issues[,]" *Bluestem Brands*, 239 W. Va. at 702, 805 S.E.2d at 813 (quoting *Chesapeake Appalachia*, 236 W. Va. at 440, 781 S.E.2d at 217), and "such a conclusion [i.e., that estoppel applies] requires careful justification." *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 406 (2d Cir. 2001). This is no mechanical exercise. The case for applying the doctrine must be "very compelling[,]" and "interests of justice, morality and common fairness [must] clearly dictate that course." *Bayles v. Evans*, 243 W. Va. 31, 41, 842 S.E.2d 235,

---

[5] The CEA states that "Consultant agrees and understands he or she will provide services under the direction and supervision of Client" and provides for "duties, location, compensation and certain other terms and conditions with respect to each assignment" to be set forth in a separate document (an "Assignment Confirmation") incorporated by reference.

245 (2020) (quoting *IBS Fin. Corp. v. Seidman & Assocs., L.L.C.*, 136 F.3d 940, 948 (3d Cir. 1998)).

As we have long held, "**[t]he doctrine of estoppel should be applied cautiously and only when equity clearly requires it to be done.**" Syl. Pt. 3, *Humble Oil & Ref. Co. v. Lane*, 152 W. Va. 578, 165 S.E.2d 379 (1969) (emphasis added). On the facts of this case, we do not find DHHR's plea for estoppel "very compelling[,]" nor do we find that "interests of justice, morality and common fairness clearly dictate" that Ms. Denise subject her claims to arbitration. *Bayles*, 243 W. Va. at 41, 842 S.E.2d at 245. Ms. Denise is not seeking to enforce the CEA, nor is she pursuing tort claims that "presume the existence of[] or otherwise rely on" the CEA. *Bluestem Brands*, 239 W. Va. at 696, 805 S.E.2d at 807, syl. pt. 4, in part. It is not enough for DHHR to allege that Ms. Denise "knew from the date of her employment" that she would be working under DHHR's direction and supervision, that, but for the CEA, Ms. Denise would never have been assigned to work at William R. Sharpe, Jr. Hospital, or that Ms. Denise claims both Sunbelt and DHHR as her "joint" employers. Ms. Denise has sued DHHR (and the other remaining defendants) for allegedly subjecting her to an abusive or hostile work environment and for allegedly retaliating against her when she complained. These are *statutory* discrimination claims, and without judging their merits, we find that she could have asserted the same claims if DHHR had hired her directly and she had never signed the CEA with Sunbelt. Accordingly, and unlike *Bluestem Brands*, this is not a case where the agreement requiring arbitration supplies essential context for the signatory's claims. 239 W. Va. at 703, 805

9

S.E.2d at 814 ("Without the credit agreement—which provided for the fees and interest rates [plaintiff] now complains of and sets the stage for the relationships and 'scheme' she alleges—she would have no cause of action."). Furthermore, though one might say that the Amended Complaint "make[s] reference"[6] to the CEA when it alleges that Ms. Denise "discovered that *her contract* had been cancelled and she was no longer employed by Defendants" (emphasis added), it is not entirely clear that "her contract" *is* a reference to the CEA.[7] Moreover, a single, possible reference to the CEA falls short of a compelling basis for applying estoppel, much less for concluding that "justice, morality, and common fairness . . . *dictate*" that we subject her claims to arbitration. *Bayles*, 243 W. Va. at 41, 842 S.E.2d at 245 (emphasis added).

Ultimately, the doctrine of estoppel exists to prevent a signatory from trying to "have it both ways" by "seek[ing] to hold the nonsignatory liable pursuant to duties imposed [by] an agreement, which contains an arbitration provision, but deny[ing] the arbitration provision's applicability because the defendant is a nonsignatory." 21 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 57:19 (4th ed. 2017).

---

[6] *See Bluestem Brands*, 239 W. Va. at 696, 805 S.E.2d at 807, syl. pt. 4 ("A non-signatory to a written agreement requiring arbitration may utilize the estoppel theory to compel arbitration against an unwilling signatory when the signatory's claims *make reference to*, presume the existence of, or otherwise rely on the written agreement. Such claims sufficiently arise out of and relate to the written agreement as to require arbitration." (emphasis added)).

[7] *See supra* note 5 regarding the separate document that was to memorialize the terms of Ms. Denise's assignment to DHHR. A copy of this document, if it exists, does not appear in the appendix record.

In the present case, the fact that DHHR has chosen to utilize the services of a third party, Sunbelt, to manage the hiring of employees or consultants, rather than hiring them directly, does not warrant the application of estoppel in this matter. On the facts of this case, we do not find that Ms. Denise is attempting to "have her cake and eat it too"; accordingly, we decline to find that DHHR, as a non-party to the CEA, may utilize the doctrine of estoppel to compel Respondent to arbitrate her statutory claims against it.

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's June 8, 2020 order in this matter, and we remand this case to the circuit court for further proceedings consistent with this opinion.[8]

Affirmed.

---

[8] Because we find that DHHR, as a non-party to the CEA, may not compel Respondent to arbitrate her claims against it, we find it unnecessary to rule on Petitioner's claims that the circuit court erred in finding that Respondent's Human Rights Act claims fall outside of the scope of the arbitration agreement and that the arbitration agreement is unconscionable. Indeed, our holding that DHHR may not invoke the terms of the arbitration agreement against Respondent renders Petitioner's alternative grounds for reversal moot.

11