**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-1142**

———————

BENJAMIN MEADOWS,

Plaintiff – Appellee,

v.

CEBRIDGE ACQUISITION, LLC; CEQUEL III COMMUNICATIONS I, LLC; CEQUEL III COMMUNICATIONS II, LLC; ALTICE USA, INC.,

Defendants – Appellants.

———————

**No. 23-1145**

———————

RICHARD CHATY,

Plaintiff – Appellee,

v.

CEBRIDGE ACQUISITION, LLC; CEQUEL III COMMUNICATIONS I, LLC; CEQUEL III COMMUNICATIONS II, LLC; ALTICE USA, INC.,

Defendants – Appellants.

———————

**No. 23-1146**

———————

ROXIE GOOCH,

Plaintiff – Appellee,

v.

CEBRIDGE ACQUISITION, LLC; CEQUEL III COMMUNICATIONS I, LLC; CEQUEL III COMMUNICATIONS II, LLC; ALTICE USA, INC.,

Defendants – Appellants.

———————

Appeals from the United States District Court for the Southern District of West Virginia, at Charleston.  Thomas E. Johnston, District Judge. (2:22-cv-00193; 2:22-cv-00188; 2:22-cv-00184)

———————

Argued:  November 1, 2024                    Decided:  March 27, 2025

———————

Before WYNN and RUSHING, Circuit Judges, and Mary Geiger LEWIS, United States District Judge for the District of South Carolina, sitting by designation.

———————

Reversed and remanded by published opinion.  Judge Rushing wrote the opinion, in which Judge Lewis joined.  Judge Wynn wrote an opinion concurring in part and concurring in the judgment.

———————

**ARGUED:**  Archis Ashok Parasharami, MAYER BROWN LLP, Washington, D.C., for Appellants.  Jonathan Franklin Mitchell, MITCHELL LAW PLLC, Austin, Texas, for Appellees. **ON BRIEF:**  Daniel E. Jones, Carmen N. Longoria-Green, MAYER BROWN LLP, Washington, D.C., for Appellants.  Talcott J. Franklin, TFPC, Portland, Maine, for Appellees.

———————

RUSHING, Circuit Judge:

These consolidated appeals arise from the denial of motions to compel arbitration in three almost identical lawsuits. Three West Virginia residents who were unhappy with their cable and internet service, provided under the brand name "Suddenlink," sued Cebridge Acquisition, LLC, Cequel III Communications I, LLC, Cequel III Communications II, LLC, and Altice USA, Inc. (collectively, Suddenlink). Suddenlink moved to compel arbitration in each case, relying on the arbitration agreement in its 2021 Residential Services Agreement. The district court denied Suddenlink's motions, concluding that a 2017 arbitration agreement controlled, was unconscionable, and could not be enforced. That was error. The 2021 arbitration agreement governs, and it is valid and enforceable. We therefore reverse and remand with instructions to compel arbitration of all three disputes.

I.

A.

Suddenlink provides broadband internet, television, and telephone services to residential customers in West Virginia, among other States. In providing these services, Suddenlink requires each customer to agree to its Residential Services Agreement (RSA), which details the terms and conditions of the parties' commercial relationship. Suddenlink generally has its service technicians present new customers with an electronic copy of the RSA to review and sign at the initial in-home service installation.

Plaintiffs Richard Chaty, Benjamin Meadows, and Roxie Gooch are Suddenlink customers who are dissatisfied with the quality and reliability of Suddenlink's internet and

3

video services.  Chaty became a Suddenlink customer in 2011, Meadows in 2013, and Gooch in 2017.  Each plaintiff has been a party to multiple versions of Suddenlink's RSA, which Suddenlink has modified at least five times since Chaty first became a customer.  *See* J.A. 257–265 (May 15, 2010); J.A. 245–255 (January 2013); J.A. 221–243 (June 1, 2016); J.A. 205–219 (September 19, 2019); J.A. 189–203 (October 1, 2021); and S.A. 1–32 (July 20, 2022).  The parties do not dispute that each plaintiff initially assented to the operative RSA at the time of his or her respective service installation and later assented to modified versions either during service visits, by paying monthly bills, or by receiving email notifications.

As relevant here, Suddenlink's RSA has included an arbitration provision since as early as 2010.  The October 2021 RSA, which was operative when all three plaintiffs sued, states on the first page: "**THIS AGREEMENT CONTAINS A BINDING ARBITRATION AGREEMENT THAT AFFECTS YOUR RIGHTS, INCLUDING THE WAIVER OF CLASS ACTIONS AND JURY TRIALS**."  J.A. 189.  The arbitration agreement, located at paragraph 24 of the RSA, provides:

> Any and all disputes arising between You and Suddenlink, or Your or it's [sic] respective predecessors in interest, successors, assigns, and past, present, and future parents, subsidiaries, affiliates, officers, directors, employees, and agents, shall be resolved by binding arbitration on an individual basis in accordance with this arbitration provision.  This agreement to arbitrate is intended to be broadly interpreted.  It includes, but is not limited to:
>
> - Claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;
> - Claims that arose before this or any prior Agreement,
> - Claims that may arise after the termination of this Agreement.

4

J.A. 194 ¶ 24(a).  By consenting to arbitration, Suddenlink and its customers "each waive the right to a trial by jury and the right to participate in a class, representative, or private attorney general action."  J.A. 194 ¶ 24(a) (capitalization and boldface omitted).

The arbitration agreement outlines the procedure to initiate arbitration.  "A party who intends to commence arbitration must first send the other party a written Notice of Dispute and engage in a good-faith negotiation of the dispute in an effort to resolve it without the need for arbitration."  J.A. 194 ¶ 24(c)(i).  If the parties do not resolve their dispute within 60 days, then a party may submit a written demand for arbitration to the American Arbitration Association (AAA).  J.A. 194 ¶ 24(c)(ii), (d).  If a customer initiates arbitration, he is responsible for a portion of the arbitration fees up to a certain amount depending on the size of his claim, with fees being "allocated in accordance with the AAA rules" for claims exceeding $10,000.  J.A. 195 ¶ 24(f).  By contrast, if Suddenlink initiates arbitration, Suddenlink pays all AAA filing, administrative, and arbitrator fees.  J.A. 195 ¶ 24(f).

Once initiated, an arbitration "will be administered by the AAA under the AAA's Consumer Arbitration Rules, as modified by [the] arbitration agreement."  J.A. 195 ¶ 24(e).  The agreement "explicitly prohibits the arbitration of consolidated, class, or representative disputes of any form," and prohibits an arbitrator from awarding "non-individualized relief that would affect other account holders."  J.A. 195 ¶ 24(h) ("[T]he arbitrator may award any relief that a court could award that is individualized to the claimant and would not affect other Suddenlink account holders . . . .").  A single arbitrator will resolve the dispute

5

and decide all issues, "except that issues relating to arbitrability, the scope or enforceability of this arbitration provision, or the interpretation of its prohibitions of class, representative, and private attorney general proceedings and non-individualized relief shall be for a court of competent jurisdiction to decide." J.A. 195 ¶ 24(e). If any portion of the arbitration agreement "is determined to be unenforceable," it can be severed and "the remainder of th[e] arbitration provision shall be given full force and effect." J.A. 196 ¶ 24(i).[1]

The arbitration agreement authorizes an appeal to "a three-arbitrator panel administered by AAA under its Optional Appellate Arbitration Rules" if the amount in dispute exceeds $75,000 or the claim seeks injunctive relief. J.A. 195 ¶ 24(e). The panel's decision "shall be final and binding, subject to any right of judicial review that exists under the [Federal Arbitration Act]," which governs the agreement. J.A. 195 ¶ 24(e), (g).

Finally, the arbitration agreement provides for modifications. Suddenlink reserves the right to amend the arbitration agreement, but any amendment does not apply to claims filed in a legal proceeding against Suddenlink before the effective date of the change. J.A. 195 ¶ 24(i). Suddenlink pledges to notify customers of changes "by posting notice of such changes on Suddenlink's website (www.suddenlink.com), or by sending notice via email or postal mail to Customer's billing address, and/or by contacting the telephone number(s) on Customer's account." J.A. 196 ¶ 31. If a customer does not agree to the revision, he "must immediately cease use of all Service(s) and notify Suddenlink that [he] is cancelling" the agreement. J.A. 196 ¶ 24(i). Otherwise, a customer's "continued use" of Suddenlink's

---

[1] Paragraph 24 of the October 2021 RSA contains two subsections labeled "(i)."

6

services following the notice of a change "shall be deemed to be the Customer's acceptance of any revision." J.A. 196 ¶ 31.

## B.

Plaintiffs filed three separate lawsuits in West Virginia state court in April 2022, complaining that Suddenlink's services were plagued with frequent outages, that Suddenlink failed to maintain or upgrade its infrastructure, and that Suddenlink did not adequately train its employees. Each complaint alleged that, "[a]ssuming the Suddenlink adhesion contract is valid and enforceable, Plaintiff and Suddenlink entered into a contract, called a Residential Services Agreement, whereby Suddenlink agreed to provide services in exchange for payments from Plaintiff." J.A. 53, 98, 151. Each plaintiff alleged that Suddenlink failed to provide safe, adequate, and reliable services in violation of its October 2021 RSA and West Virginia state law. Plaintiffs sought damages on their negligence, unjust enrichment, and breach of contract claims. And they each sought a declaratory judgment that Suddenlink's arbitration agreement was unenforceable, void for lack of consideration, or otherwise unconscionable.

Suddenlink removed each case to federal court based on diversity jurisdiction and immediately moved to stay the proceedings and compel arbitration, relying on the arbitration agreement in the October 2021 RSA (henceforth, 2021 Arbitration Agreement). Despite repeatedly referencing the October 2021 RSA in their complaints, plaintiffs asserted in response to Suddenlink's motion that an even more recent RSA, updated in July 2022, applied.

7

The district court disagreed with both parties, instead concluding that "the arbitration agreement in effect in July 2017 at the time [Gooch] signed up for services . . . is operative because (1) there are no genuine issues of material fact that [Gooch] entered into the 2017 Arbitration Agreement, and (2) Suddenlink's attempts to unilaterally modify the terms thereafter were ineffective."[2] *Gooch v. Cebridge Acquisition LLC*, No. 2:22-cv-00184, 2023 WL 415984, at *4 (S.D. W. Va. Jan. 25, 2023).  The court did not address the fact that Meadows signed up for Suddenlink services in 2013 and Chaty did so in 2011.[3]

Examining the 2017 Arbitration Agreement sua sponte, the district court concluded it was both procedurally and substantively unconscionable.  *See Gooch*, 2023 WL 415984, at *11–20.  Regarding procedural unconscionability, the court considered the bargaining power between the parties "unquestionably unequal" because plaintiffs were "relatively unsophisticated consumer[s] contracting with corporate Defendants who drafted" the agreement.  *Id.* at *12.  The court determined the 2017 Arbitration Agreement was adhesive and, "[u]nlike latter versions," did not contain an opt-out provision.  *Id.* at *13.  Reviewing the agreement's terms, the court found them "unduly complex" and "excessively difficult to understand" because they incorporated the AAA rules without summarizing, attaching,

---

[2] The district court referred to the arbitration agreement in the June 1, 2016, RSA as the 2017 Arbitration Agreement.  We will do the same.

[3] In *Gooch*, the district court denied Suddenlink's motion to compel arbitration in a reasoned opinion.  *See* 2023 WL 415984.  Subsequently, the court entered summary orders in *Meadows* and *Chaty*, denying Suddenlink's motions in those cases "for the reasons more fully set forth" in *Gooch*.  Order, *Chaty v. Cebridge Acquisition, LLC*, No. 2:22-cv-00188, ECF No. 16 (S.D. W. Va. Jan. 25, 2023); Order, *Meadows v. Cebridge Acquisition, LLC*, No. 2:22-cv-00193, ECF No. 16 (S.D. W. Va. Jan. 25, 2023).  The court did not provide any further reasoning to support its orders in *Meadows* or *Chaty*.

or hyperlinking them, and departed from those rules in some instances. *Id.* And the court concluded plaintiffs were not afforded a "reasonable opportunity" to understand the arbitration agreement when asked to read "complicated contract terms on a mobile device while a service technician waited" for their signature. *Id.* at *14. In the court's view, these circumstances together "demonstrate[d] a gross inadequacy in bargaining power," resulting in a procedurally unconscionable agreement. *Id.* at *15 (internal quotation marks omitted).

As for substantive unconscionability, the district court rejected plaintiffs' contention that the terms of arbitration made pursuing small claims "financially unrealistic," but nevertheless found other terms in the 2017 Arbitration Agreement lacked mutuality or were overly harsh. *Id.* at *17. Specifically, the court noted a provision allowing Suddenlink to pursue in court claims relating solely to the collection of debts and a provision requiring customers, but not Suddenlink, to initiate arbitration within one year of the claim. The court also reasoned that the 2017 Arbitration Agreement's bar on awarding punitive damages "support[ed] a finding of substantive unconscionability." *Id.* at *19. Despite a severability clause in the agreement, the district court declined to sever the purportedly unconscionable portions because "the offending provisions . . . go to the 'essence' of the Arbitration Agreement." *Id.* at *21. Having held the 2017 Arbitration Agreement unconscionable and therefore unenforceable, the district court denied Suddenlink's motions to compel arbitration in all three cases.

Suddenlink timely appealed to this Court, and we consolidated the three appeals. We have jurisdiction under the Federal Arbitration Act (FAA), which authorizes an immediate appeal from an order denying a motion to compel arbitration. 9 U.S.C. § 16(a).

II.

We review a district court's denial of a motion to compel arbitration de novo. *Sydnor v. Conseco Fin. Serv. Corp.*, 252 F.3d 302, 304–305 (4th Cir. 2001). Under the FAA, a litigant can compel arbitration if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–501 (4th Cir. 2002) (internal quotation marks omitted). Only the second element is contested here.

If a valid arbitration agreement exists and governs the parties' dispute, a court "has no choice but to grant a motion to compel." *Id.* at 500. Whether the parties have in fact executed an enforceable agreement to arbitrate is a matter of contract interpretation governed by state law, which we also review de novo. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Rota–McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 699 (4th Cir. 2012).

III.

The sole issue before us is whether a valid, enforceable arbitration agreement exists.[4] We will first address the existence of an agreement and then assess its enforceability.

---

[4] The parties do not dispute that plaintiffs' claims fall within the scope of the arbitration agreement.

10

A.

"Arbitration is a matter of contract." *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020). To determine "whether the parties agreed to arbitrate," courts apply "ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. Those principles must be generally applicable and cannot "single[] out" arbitration agreements for "disfavored treatment." *Kindred Nursing Ctrs. L.P. v. Clark*, 581 U.S. 246, 252 (2017). Under West Virginia law, which applies here, "the fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent." *State ex rel. AMFM, LLC v. King*, 740 S.E.2d 66, 73 (W. Va. 2013) (internal quotation marks omitted). No one has suggested that the parties are incompetent or the subject matter of the agreement illegal.

1.

Beginning then with mutual assent, we depart from the district court's decision to apply the 2017 RSA, a version of the contract that no party below argued should govern the present disputes. Plaintiffs agree with Suddenlink that the October 2021 RSA—and the arbitration agreement within it—applies to their claims. *See* Pls.' Resp. to 28(j) Letter, ECF No. 51 (June 24, 2024) ("[P]laintiffs are not contesting assent in this appeal."); Oral Arg. at 19:25–19:33 ("To be clear, we agree that we assented to the October 2021 Agreement, so it is applicable to this case."). But plaintiffs now attempt to escape the 2021 Arbitration Agreement by averring they are "simultaneously" parties to all earlier and later versions of the RSA in place while they were Suddenlink customers, each of which "claims

11

to reach into the past and into perpetuity," creating conflicting obligations. Resp. Br. 18. Not so.

First, concerning the earlier RSAs, when plaintiffs assented to the October 2021 RSA and arbitration agreement therein, that version necessarily superseded any preceding version of the agreement. "It is a well-established, fundamental principle of contract law" that a prior contract between the parties may be "superseded by a subsequent contract," provided that all elements of formation are satisfied. *Thornsbury v. Cabot Oil & Gas Corp.*, 749 S.E.2d 569, 573 (W. Va. 2013); *see also State ex rel. AT&T Mobility LLC v. Wilson*, 703 S.E.2d 543, 547 (W. Va. 2010). And a superseding contract need not say so expressly. Rather, under West Virginia law "a subsequent contract which does not by express terms abrogate an earlier contract nevertheless will operate as a discharge thereof, if it is inconsistent with such earlier contract." *Myers v. Carnahan*, 57 S.E. 134, 136 (W. Va. 1907); *accord Consolidation Coal Co. v. Mineral Coal Co.*, 126 S.E.2d 194, 201 (W. Va. 1962). As plaintiffs themselves argue, the various arbitration agreements "contain differing and mutually incompatible provisions." Resp. Br. 28. Because multiple versions cannot apply, the later-in-time version controls. *See Myers*, 57 S.E. at 136.

Second, as to the July 2022 RSA, it cannot apply because it became effective only after plaintiffs sued. The July 2022 RSA and arbitration provision therein postdate plaintiffs' April 2022 complaints and even Suddenlink's May 2022 motions to compel arbitration. *See, e.g.*, Defs.' Mot. to Compel Arb., *Gooch*, No. 2:22–cv–00101, ECF No. 8 (S.D. W. Va. May 23, 2022). The 2021 Arbitration Agreement, which was the governing version when plaintiffs sued, specifically provides that the parties "agree that if we make

12

any amendment to this arbitration provision . . . in the future, that amendment shall not apply to any claim that was filed in a legal proceeding against Suddenlink prior to the effective date of the amendment." J.A. 196 ¶ 24(i). And while the July 2022 RSA states that amendments "shall apply to . . . disputes or claims that arose prior to the effective date of the amendment," that clause applies only to "amendment[s] to this arbitration provision . . . in the future"; it does not purport to apply retroactively. S.A. 16 ¶ 24(j).

Plaintiffs are not simultaneously bound by conflicting agreements. Instead, because neither earlier nor later versions of the RSA interfere with the operation of the 2021 Arbitration Agreement, we are satisfied that plaintiffs' concession focuses our inquiry on the sole applicable agreement.

2.

We are also satisfied that the remaining element of contract formation—valuable consideration—was fulfilled for the 2021 Arbitration Agreement. "[A] mutual agreement to arbitrate is sufficient consideration to support an arbitration agreement," and here both parties surrendered their right to trial and obligated themselves to arbitrate disputes. *Hampden Coal, LLC v. Varney*, 810 S.E.2d 286, 293 (W. Va. 2018); *Adkins*, 303 F.3d at 501 ("[N]o consideration is required above and beyond the agreement to be bound by the arbitration process." (internal quotation marks and brackets omitted)).

Plaintiffs respond that the consideration is illusory because Suddenlink retained the ability to unilaterally modify the agreement. "[A]n illusory promise appears to be a promise, but it does not actually bind or obligate the promisor to anything" and so "cannot constitute consideration." *Donna S. v. Travis S.*, 874 S.E.2d 746, 754 (W. Va. 2022)

13

(internal quotation marks omitted). However, the unilateral right to modify a contract, including an arbitration agreement, does not render an underlying promise illusory if the modifying party must give reasonable notice of modification. *See Citizens Telecomms. Co. v. Sheridan*, 799 S.E.2d 144, 152–153 (W. Va. 2017) ("[R]etaining the right to make changes . . . does not necessarily mean promises explicitly or implicitly made . . . are not enforceable, at least until such time as they are in fact changed." (internal quotation marks omitted)).

For example, in *Sheridan*, customers of telecommunications provider Frontier argued the promise to arbitrate was illusory when Frontier retained the right to unilaterally change the parties' arbitration agreement. 799 S.E.2d at 153. The agreement permitted Frontier to change the terms and conditions "at any time" by giving the customer notice, and further provided the customer would "accept the changes" by "us[ing] the service after notice is provided." *Id.* at 147 (capitalization and boldface omitted). Rejecting the customers' argument, the Supreme Court of Appeals of West Virginia held that "the agreement to arbitrate is not an illusory promise because both parties are bound to arbitrate and unilateral changes to the agreement to arbitrate may not be implemented without consent from Frontier customers." *Id.* at 153.

The same is true here. To be sure, Suddenlink could modify the arbitration agreement "in its sole discretion." J.A. 196 ¶ 31. However, Suddenlink must "notify [customers] of amendments" to the arbitration agreement, at which point customers who "do not agree to the revisions" can cancel their RSAs. J.A. 196 ¶ 24(i). As in *Sheridan*, a "[c]ustomer's continued use of the [services] following notice of such change, modification

14

or amendment shall be deemed . . . acceptance." J.A. 196 ¶ 31. In view of these notice requirements, the mutual promise to arbitrate is not illusory under West Virginia law. *See Sheridan*, 799 S.E.2d at 153.

The 2021 Arbitration Agreement therefore satisfies all the elements of contract formation, and that version governs these disputes to the exclusion of any prior or subsequent agreement.

## B.

Before we assess the enforceability of the 2021 Arbitration Agreement, we find it necessary to explain the limits on our review. Many of plaintiffs' complaints about the RSA concern terms and conditions outside the Arbitration Agreement. But our review is cabined to the enforceability of the Arbitration Agreement itself. We may not determine the enforceability of other contractual provisions within the RSA, which the contract reserves for the arbitrator to decide. *See* J.A. 195 ¶ 24(e). As the Supreme Court has explained, an arbitration agreement is severable from the remainder of the contract, and "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–446 (2006); *see also Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 637 (4th Cir. 2002). Once "a court is 'satisfied that the making of the agreement for arbitration . . . is not in issue,' it must send the dispute to an arbitrator." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024) (quoting 9 U.S.C. § 4); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404 (1967) (explaining that the FAA limits a court to "consider only issues relating to the making and performance of

15

the agreement to arbitrate"). Accordingly, plaintiffs' numerous challenges to the general terms of the October 2021 RSA are for the arbitrator to decide, and we reject the invitation to consider them here.

Plaintiffs attempt to sidestep this principle by arguing that Suddenlink endeavors to evade judicial review of unconscionable arbitration terms by moving them outside the Arbitration Agreement into the main body of the RSA. Regardless of the contractual location of the contested term, however, "[a] party challenging the enforceability of an arbitration clause under Section 2 of the FAA must rely on grounds that 'relate specifically to the arbitration clause and not just to the contract as a whole.'" *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 183–184 (4th Cir. 2013) (quoting *Snowden*, 290 F.3d at 636); *see also Snowden*, 290 F.3d at 634 (considering "all of the language in the [contract] pertaining to the subject of arbitration" to be the arbitration agreement). Any "alleged defects" that "pertain to the entire contract, rather than specifically to the arbitration clause" must be "left to the arbitrator for resolution." *Jeske v. Brooks*, 875 F.2d 71, 75 (4th Cir. 1989).

None of the provisions plaintiffs challenge outside the 2021 Arbitration Agreement (at paragraph 24 of the October 2021 RSA) pertain exclusively to the subject of arbitration, as opposed to the contract as a whole. For example, plaintiffs argue that Suddenlink "moved the problematic limitation on punitive damages out of the arbitration clause and placed it into a different provision of the [RSA]." Resp. Br. 28. They make the same claim regarding the one-year "contractual statute of limitations." Resp. Br. 38. Plaintiffs are mistaken. The allegedly relocated provisions, or similar language, can also be found outside the arbitration agreement in the 2017 RSA. *See* J.A. 223–224, 226–227. More

16

importantly, the challenged provisions do not single out (or even mention) arbitration, and thus would apply equally to disputes in any forum. The same is true for the "limitation of liability" paragraphs in the RSA about which plaintiffs complain. Any challenge to the validity of those general contract provisions is reserved for the arbitrator. *Buckeye Check Cashing*, 546 U.S. at 445–446; *see also Muriithi*, 712 F.3d at 184 (holding that district court erred in resolving challenge to contractual one-year limitations provision on a motion to compel arbitration because the challenge "does not rely on any aspect of the Arbitration Clause, but relates only to the general contract defense itself").

## C.

We now turn to whether the 2021 Arbitration Agreement is enforceable. The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Plaintiffs contend the Arbitration Agreement cannot be enforced because it is unconscionable in various respects. "The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness, or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written." *Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250, 283 (W. Va. 2011) (*Brown I*), *vacated on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012). West Virginia law governs the enforceability of the Arbitration Agreement's terms, and in West Virginia, a contract term is unenforceable only "it if is both procedurally and substantively unconscionable." *Id.* at 289. In evaluating these components, West Virginia courts employ a sliding scale: "the more substantively oppressive the contract term, the less evidence of

17

procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." *Id.*

1.

"Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract." *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 227 (W. Va. 2012) (*Brown II*) (internal quotation marks omitted). Inadequacies relevant to procedural unconscionability "include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." *Id.* (internal quotation marks omitted).

Plaintiffs' laundry list of alleged procedural inadequacies in the 2021 Arbitration Agreement lacks merit. First, plaintiffs suggest that Suddenlink's arbitration agreement is difficult for customers in West Virgina to understand because "17 percent of West Virginia adults have significant difficulty with literacy." Resp. Br. 37–38 (internal quotation marks omitted). That generalized contention is irrelevant here, where none of the plaintiffs claim to struggle with literacy. *See New v. GameStop, Inc.*, 753 S.E.2d 62, 76 (W. Va. 2013) (finding no procedural unconscionability where plaintiff "failed to offer any evidence that she was incapable due to age, literacy or lack of sophistication to understand" the arbitration agreement). We also do not infer unconscionability from Suddenlink's purported "monopoly power" over the services it provides, Resp. Br. 26, or the generically described unequal bargaining power between the parties. "A ruling of unconscionability

18

based on this analysis alone could potentially apply to every" telecommunications contract, and arguably every consumer contract. *Adkins*, 303 F.3d at 501–502; *see Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 753 (W. Va. 1986) (explaining, in unconscionability analysis, that "it is not the province of the judiciary to try to eliminate the inequities inevitable in a capitalist society").

In a related vein, plaintiffs emphasize the adhesive nature of Suddenlink's contract. Yet contracts of adhesion are commonplace and not presumptively unconscionable. *Brown I*, 724 S.E.2d at 286; *see also Nationstar Mortg., LLC v. West*, 785 S.E.2d 634, 639 n.12 (W. Va. 2016) ("[T]here is nothing inherently wrong with a contract of adhesion." (internal quotation marks omitted)). It is true that "[a] contract of adhesion must be closely scrutinized to determine if it imposes terms beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable terms, any of which will prevent enforcement of the agreement." *Brown I*, 724 S.E.2d at 287. But while an adhesive contract deserves extra scrutiny, that is only "the beginning point for analysis, not the end of it." *State ex rel. Ocwen Loan Serv., LLC v. Webster*, 752 S.E.2d 372, 389 (W. Va. 2013) (internal quotation marks omitted); *see also Brown II*, 729 S.E.2d at 228 ("[W]hat courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not." (internal quotation marks omitted)).

19

The same goes for a preexisting customer's inability to opt out of Suddenlink's form arbitration agreement, which plaintiffs protest.[5] As the Supreme Court of Appeals of West Virginia has explained, the absence of an "'opt out' provision," while "one of multiple factors to consider," "is not in itself sufficient evidence that an arbitration agreement is grossly unfair and thus unenforceable on grounds of procedural unconscionability." *Nationstar Mortg.*, 785 S.E.2d at 640. In fact, the absence of an opt-out provision is analytically indistinct from the agreement's adhesive nature. That is, as existing Suddenlink customers, plaintiffs must either agree to arbitrate their disputes or find another telecommunications provider. Without further marks of unfairness, we cannot deem that commercial proposition unconscionable without "singling out" an arbitration agreement for "disfavored treatment" in violation of the FAA. *Kindred Nursing Ctrs.*, 581 U.S. at 252. So absent further evidence of unconscionability, plaintiffs are not absolved of their commitments just because Suddenlink's contract—and its requirement that disputes be arbitrated—is presented on a take-it-or-leave-it basis. *See Troy Mining*, 346 S.E.2d at 753 ("A litigant who complains that he was forced to enter into a fair agreement will find no relief on grounds of unconscionability.").

We also cannot conclude the 2021 Arbitration Agreement contains hidden or unduly complex terms. As explained, Suddenlink did not move or "hide" arbitration-related provisions elsewhere within the RSA. *See supra* Part III.A. Nor, contrary to the district

---

[5] The 2021 Arbitration Agreement allows individuals who became Suddenlink customers within 30 days of the agreement's effective date to opt out altogether. The opt-out provision does not apply to existing customers who previously entered an arbitration agreement.

court's assessment, are "the terms that lay out the rules governing arbitration . . . excessively difficult to understand." *Gooch*, 2023 WL 415984, at \*13 (internal quotation marks and capitalization omitted). The 2021 Arbitration Agreement incorporates "the AAA's Consumer Arbitration Rules, as modified by this arbitration provision." J.A. 195 ¶ 24(e). The Supreme Court of Appeals of West Virginia has repeatedly upheld arbitration agreements incorporating the AAA's rules. *See, e.g.*, *Sheridan*, 799 S.E.2d at 147 n.2; *Shorts v. AT&T Mobility*, No. 11-1649, 2013 WL 2995944, at \*7 (W. Va. June 17, 2013). The agreement here even includes a hyperlink to the AAA website where the rules can be found, closing a gap that troubled the district court when it evaluated a prior version of the agreement. And to the extent the 2021 Arbitration Agreement varies from the AAA rules in certain instances, plaintiffs have not raised any concern about those provisions.

Lastly, Suddenlink's practice of having its customers review and consent to the arbitration agreement during service installation is not unconscionable.[6] Contrary to the district court's view, presenting customers with a mobile device on which to read and sign the RSA does not deny them a "*reasonable opportunity to understand* the terms." *Gooch*, 2023 WL 415984, at \*14. Reading multiple pages of text on a technician's mobile device

---

[6] We address the circumstances of plaintiffs' initial agreement to arbitrate because the district court found it supported procedural unconscionability. We recognize, however, that plaintiffs concede they subsequently assented to the modified 2021 Arbitration Agreement by receiving and paying their monthly bills, which stated that payment confirmed acceptance of the RSA, viewable at a hyperlinked web address. *See, e.g.*, *Frashuer v. Altice USA, Inc.*, No. 2:21-CV-17, 2023 WL 195523, at \*2 (N.D. W. Va. Jan. 17, 2023) ("Defendant offered its terms and conditions through its billing statement and corresponding website, and Plaintiff accepted Defendant's terms and conditions by continuing to use and pay for Defendant's services.").

may be tedious, but that inconvenience is not unconscionable. *Cf., e.g., Mey*, 971 F.3d at 286 (upholding arbitration agreement where customer in store "was electronically presented with the [agreement], which she could read on the screen or print"); *Hancock v. AT&T Co.*, 701 F.3d 1248, 1257 (10th Cir. 2012) (finding valid assent where customer was required to use a "web application . . . presented on the technician's laptop"). Moreover, the arbitration provision was bolded and underlined, and the final acknowledgement that plaintiffs each signed explicitly noted the presence of a binding arbitration provision. *See United States ex rel. TBI Invs., Inc. v. BrooAlexa, LLC*, 119 F. Supp. 3d 512, 531–532 (S.D. W. Va. 2015) (enforcing arbitration clause that was provided directly above the signature line). Because plaintiffs were not prevented from reading the clearly labeled arbitration provision, Suddenlink's procedure does not support unconscionability.

2.

Given plaintiffs' minimal showing on procedural unconscionability, they must show significant substantive unconscionability to succeed in proving the 2021 Arbitration Agreement unenforceable on West Virginia's sliding scale. Under West Virginia law, "[a] contract term is substantively unconscionable only if it is both one-sided and overly harsh as to the disadvantaged party." *McFarland v. Wells Fargo Bank, N.A.*, 810 F.3d 273, 278 (4th Cir. 2016) (internal quotation marks omitted). "Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 717 S.E.2d 909, 921 (W. Va. 2011) (internal quotation marks omitted).

22

Plaintiffs first allege that two procedural terms in the 2021 Arbitration Agreement are substantively unconscionable: the pre-arbitration notice requirement and the appeals process. Neither is. Regarding notice, the arbitration agreement requires a party, before initiating arbitration, to send the counterparty a notice of dispute and wait 60 days to attempt to "reach an agreement" to settle the dispute without arbitration. J.A. 194. There is nothing unreasonable, let alone unconscionable, about such a provision. It applies to both parties equally. And it serves a commercially reasonable purpose by allowing both parties the opportunity to resolve disputes informally without incurring the expense of arbitration. *Cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336–337 (2011) (upholding arbitration provision that required notice of dispute and 30-day resolution waiting period).

Nor is the arbitration appeals process unreasonable. Either party may appeal an arbitral award to a three-member panel if the amount in dispute exceeds $75,000 or "the claim seeks any form of injunctive relief." J.A. 195 ¶ 24(e). Plaintiffs contend this procedure can only benefit Suddenlink, but they simply misread the provision and so ignore the customer's right to appeal an arbitrator's denial of injunctive relief. Likewise, plaintiffs' fear that incorporation of the AAA's Optional Appellate Arbitration Rules (OAAR) "might open the door toward shifting fees onto a customer" is misguided. Resp. Br. 46–47. As plaintiffs and Suddenlink both acknowledge, the OAAR by their terms "do not apply to disputes where the arbitration clause is contained in an agreement between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the

23

purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices." OAAR A-1*. At most, then, Suddenlink's effort to incorporate the OAAR was ineffective, and we are left with an otherwise reasonable appeals protocol.

Plaintiffs also take issue with the 2021 Arbitration Agreement's prohibition on "non-individualized relief that would affect other account holders," but this line of attack is foreclosed by the FAA and West Virginia law. J.A. 195 ¶ 24(h). As an initial matter, class action waivers in arbitration agreements are enforceable under the FAA. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 238–239 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340–344 (2011). And West Virginia courts have upheld waivers of class-wide relief in the face of unconscionability challenges. *See Sheridan*, 799 S.E.2d at 147 n.2, 148, 154; *Ocwen*, 752 S.E.2d at 393; *State ex rel. AT&T Mobility v. Wilson*, 703 S.E.2d 543, 550 (W. Va. 2010). For example, in *Sheridan*, Frontier's arbitration agreement, similar to Suddenlink's here, authorized the arbitrator to award "individual relief," including "individualized injunctions," but waived the customer's "right to participate in a class action, a representative proceeding or a private attorney general action." 799 S.E.2d at 147 & n.2. The Supreme Court of Appeals of West Virginia rejected the plaintiffs' unconscionability argument and upheld the agreement's "prohibition of class-wide injunctive relief." *Id.* at 154 ("It is permissible for parties to an arbitration provision to agree to waive class-wide injunctive relief."). *Sheridan* is on point and controlling, therefore we conclude that the waiver of non-individualized relief in Suddenlink's arbitration agreement is not substantively unconscionable.

24

Having considered plaintiffs' arguments regarding both components of unconscionability, we must conclude the 2021 Arbitration Agreement is not procedurally and substantively unconscionable. *See Horizon Ventures of W. Va., Inc. v. Am. Bituminous Power Partners, L.P.*, 857 S.E.2d 33, 41 (W. Va. 2021) ("'[T]he burden of proving that a contract term is unconscionable rests with the party attacking the contract.'" (quoting *Brown I*, 724 S.E.2d at 284)). Accordingly, plaintiffs' challenge to the enforceability of that agreement fails.

IV.

Lastly, we consider plaintiffs' claim that Suddenlink has waived its right to compel arbitration of these disputes by entering into a class settlement to resolve different claims about fees and surcharges in New Jersey state court. *See Seale v. Altice USA, Inc.*, No. MER-L-618-23 (N.J. Sup. Ct. Mar. 31, 2023); *see also Edens v. Cebridge Acquisition, LLC*, No. 22-0101 (S.D. W. Va. Jan. 2, 2024), ECF No. 48-1, at ¶ 3 & Exs. A–C.

Plaintiffs' position is untenable. Suddenlink has stipulated that its out-of-state class settlement does not cover plaintiffs' claims here, which are not about fees and surcharges. Litigation surrounding factually and legally distinct claims "cannot support a finding that [a party] waived its right to arbitrate . . . unrelated claims" brought by a different counterparty. *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001).

Indeed, courts have roundly rejected the idea that "allegedly inconsistent conduct in a separate case involving a different party can waive the right to arbitrate." *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 620 (N.D. Cal. 2019); *see Leeper v. Altice USA, Inc.*, 722 F. Supp. 3d 893, 901 (W.D. Ark. 2024) (rejecting waiver of

25

Suddenlink's right to arbitrate based on the same New Jersey settlement plaintiffs raise here); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1113 (C.D. Cal. 2002) ("[T]o hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd."). As another court has observed, "[t]o hold that a defendant waives its right to compel arbitration in one case by entering a judicial settlement in another case would create a disincentive to settle" that "is to be avoided." *Lawrence v. Household Bank (SB), N.A.*, 343 F. Supp. 2d 1101, 1113 (M.D. Ala. 2004). Suddenlink's efforts to settle the New Jersey claims did not waive its right to arbitrate these disputes.

V.

Ultimately, although plaintiffs would have us do more, the FAA and the parties' contract restrict us to deciding only whether plaintiffs and Suddenlink entered into a valid and enforceable arbitration agreement that governs the disputes alleged in plaintiffs' complaints. We conclude that they did. In so holding, we do not assess the merits of plaintiffs' underlying state law claims or the enforceability of other RSA provisions. Instead, as the FAA requires, we simply instruct that the parties' agreement to arbitrate be enforced. The district court's judgments denying Suddenlink's motions to compel arbitration are reversed, and the cases are remanded with instructions to compel arbitration.

*REVERSED AND REMANDED*

WYNN, Circuit Judge, concurring in part and concurring in the judgment:

I agree with the majority opinion that the district court erred in concluding that the 2017 Arbitration Agreement controlled, was unconscionable, and could not be enforced. As the majority opinion correctly explains, the 2021 Residential Services Agreement ("RSA") governs this dispute, and its arbitration clause is valid and enforceable. I write separately to make clear my reasoning for agreeing with the majority opinion.

The majority opinion concludes that the 2021 RSA's modification clause does not undermine its arbitration provision because "Suddenlink must 'notify [customers] of amendments' to the arbitration agreement, at which point customers who 'do not agree to the revisions' can cancel their RSAs." Majority Op. at 14. I agree that under West Virginia law, reasonable notice can support a unilateral modification. But the modification clause at issue here *does* undermine Suddenlink's promise to arbitrate, because it permits Suddenlink to unilaterally revoke that promise without reasonable notice.

Under West Virginia law, "a subsequent modification" of a unilateral contract requires "reasonable notice of the changes." *Citizens Telecomms. Co. v. Sheridan*, 799 S.E.2d 144, 151 (W. Va. 2017) (quoting *Hogue v. Cecil I. Walker Mach. Co.*, 431 S.E.2d 687, 691 (W. Va. 1993)). *Sheridan*, for example, found that requirement satisfied when an internet provider gave "written notice of the change" to its consumer agreement and included "a paper copy" of the revised agreement in customers' billing statements. *Id.* The court explained that the provider "was entitled to rely on its customers to read information circulated to them." *Id.*

27

Here, the 2021 RSA requires Suddenlink to "notify [customers] of amendments to th[e] arbitration provision in the manner described in" the modification clause. J.A. 196. So far, so good. But according to the modification clause, "sufficient notice" can include "posting notice of [the] changes on Suddenlink's website," without any effort to contact the customer. *Id.* That does not satisfy West Virginia's reasonable-notice standard. True, as Suddenlink argues, "[a] court can assume that a party to a contract has read and assented to its terms." *New v. GameStop, Inc.*, 753 S.E.2d 62, 76 (W. Va. 2013) (quoting *Adkins v. Lab. Ready, Inc.*, 185 F. Supp. 2d 628, 638 (S.D. W. Va. 2001)). But a court cannot assume that a party has assented to *modified* terms when it had no reason to know of the modification.[1]

Nevertheless, this infirmity does not afflict the *formation* of the arbitration agreement. In West Virginia (unlike in some other states[2]), the consideration supporting a consumer contract as a whole can also support its included arbitration agreement. *See Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 556–58 (W. Va. 2012). So Suddenlink's discretion to modify (or even revoke) the arbitration agreement with only passive notice

---

[1] This issue is not remedied by the modification clause's provision purporting to obligate customers "to regularly check . . . all postings on the Suddenlink web site." J.A. 196. The touchstone of West Virginia's unilateral-modification requirement is reasonable notice. *See Sheridan*, 799 S.E.2d at 151. It is not reasonable to expect customers to continually check a corporate website for unilateral changes to a binding user agreement; and it is eminently reasonable to expect the corporation to make some effort to contact customers to inform them of the changes.

[2] *See, e.g.*, *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 669 (Md. 2003) (holding that under Maryland law, the consideration supporting a container contract is not "sufficient to support" an included arbitration agreement).

does not undermine the *only* consideration supporting the arbitration agreement—as it might in, say, Maryland. *See Johnson v. Cont'l Fin. Co.*, --- F.4th ---, No. 23-2047, 2025 WL 758026, at *9–10 (4th Cir. Mar. 11, 2025) (Wynn, J., concurring).

Of course, an attempt to surreptitiously revoke the arbitration provision and then sue might violate the implied covenant of good faith and fair dealing. But under West Virginia law, the possibility of such a ploy doesn't preclude the *formation* of an arbitration agreement that draws consideration from its container contract. Because the arbitration agreement is validly formed—and because Plaintiffs' unconscionability arguments fail[3]— we must enforce it.

Subject to these observations, I concur in the majority opinion's analysis and in its holding.

---

[3] I am skeptical that presenting customers with a mobile device on which to read and sign a complex, multi-page contract while a technician waits provides them with a "*reasonable opportunity to understand* the terms." *Gooch v. Cebridge Acquisition LLC*, No. 2:22-cv-00184, 2023 WL 415984, at *14 (S.D. W. Va. Jan. 25, 2023). But here, that factor does not tip the balance of West Virginia's demanding unconscionability test—and in any event, Plaintiffs have conceded their assent to the operative (2021) arbitration agreement.